PICCARRETA DAVIS KEENAN FIDEL PC
2 East Congress Street, Suite 1000
Tucson, Arizona 85701-1782
(520) 622-6900
Michael L. Piccarreta
State Bar No. 003962
Email: mlp@pd-law.com
Jefferson Keenan
State Bar No. 013896
Email: jkeenan@pd-law.com
*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| United States of America, | No. CR-18-01793-001-TUC-JAS (DTF) |
|---|---|
| Plaintiff, | |
| v. | RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM |
| Keith A. Bee, | |
| Defendant. | |

The defendant, Keith A. Bee, by and through his undersigned counsel, hereby responds to the Government's Sentencing Memorandum. (Doc. 124).

It is a bedrock principle of sentencing jurisprudence in our system that a defendant has a "due process right to have his sentence based on accurate information." *United States v. Jones*, 982 F.2d 380, 385 (9th Cir. 1992). In accordance with that principle, the purpose of the plea agreement in the present case was to provide the Court with an agreed-upon factual basis setting forth the facts that both sides agreed were accurate, setting forth a sentencing guideline range that both parties agreed was applicable, and setting forth a mutually agreed-upon sentencing range. Mr. Bee received and reviewed the Presentence Investigation Report

("PSI"), and noted that it correctly set forth the terms of the plea agreement, the agreed-upon sentencing guideline range, and the agreed-upon sentencing range of zero to ten months, and correctly recommended a sentence of 60 months' probation within that range. However, Mr. Bee also noted that the information in the report describing the offense conduct incorrectly repeated many factual inaccuracies that were contained in the Special Agent Report ("SAR") prepared by Internal Revenue Service ("IRS") Special Agent Vanessa Miller. Mr. Bee therefore filed his objections to, and comments on, the PSI, setting forth the history of the case, the involvement of the forensic accounting experts this Court appointed to assist Mr. Bee, and the subsequent analysis and negotiations concerning the case that led to the agreed-upon statement of facts set forth in the plea agreement. (Doc. 114).[1]

Mr. Bee specifically noted that the factual inaccuracies in the SAR that made their way into the PSI did not affect the plea agreement, the agreed-upon sentencing guideline range, and the agreed-upon stipulated sentence of zero to ten months. (*Id*., p. 3). However, Mr. Bee also specifically noted: "The negotiated statement of facts which formed the basis for the plea and the basis for Mr. Bee's sentencing are stipulated and agreed upon by the parties. *Items contained in the SAR that are not specifically discussed in the statement of facts for the plea agreement are not agreed to by the defendant.*" (*Id*., emphasis added). Mr. Bee

---

[1] For example, the original SAR, upon which the government relies so heavily, indicated that for 2011 the tax loss was $217,531 when, in fact, it was $24,884. For 2012, the SAR indicated the tax loss was $118,369 when, in fact, it was $27,857. For 2013, the SAR indicated the tax loss was $252,050 when, in fact, it was $161,673. There was no agreement that the entire tax loss (outside of the personal automobiles) was criminal, or even civil, fraud, and, indeed, it was not.

2

further noted that this Court should have the benefit of the subsequent investigation into the case in which the factual inaccuracies were revealed, and the subsequent negotiations and resolution of the issues leading to the agreed-upon factual basis, so that the Court would have accurate information before it upon which to base its sentencing decision. Mr. Bee further noted that under the applicable legal authorities, this Court was not required to resolve all disputed matters within the PSI, and may rely instead upon the agreed-upon factual basis for the plea agreement. (*See* authorities set forth at *id*., pp. 3-4).

In contrast, the government filed no objections to the PSI, not even to its recommendation of a sentence, within the agreed-upon sentencing range, of 60 months' probation and a fine of restitution and interest totaling $343,133.05. While the government noted its disagreement with the information set forth in Mr. Bee's objections to, and comments on, the PSI, (Doc. 119), the government never questioned the authority set forth by Mr. Bee stating that this Court need not resolve those factual disputes, and may rely upon the agreed-upon factual basis instead. Indeed, the government agreed that the disputed factual issues "do not affect the tax loss -- which is agreed -- and hence they do not affect the guideline calculation." (*Id*., p. 7). Now, it appears that the government wants to have it both ways. After assuring the Court that it need not resolve these factual issues, the government now insists that the Court must accept *its* version, and only *its* version, of the nature and the circumstances of the offense, which includes matters that Mr. Bee never agreed to and are not set forth in the factual basis to the plea agreement. This is significant because the government wants this Court to punish Mr. Bee *criminally* for matters outside of the agreed-upon statement of facts that have never been determined to be criminal, or even fraudulent,

3

in nature.

To recap these matters once again, in the stipulated agreement of facts, Mr. Bee specifically admitted that he knowingly and willfully overstated his company's expenses to reduce his tax liability by including personal expenses and depreciation of personal assets including payments for and depreciation of automobiles that were not used in the ordinary course and scope of the business. (Doc. 104, p. 12). Mr. Bee therefore agreed to plead guilty to one count of making and subscribing a false income tax return for the tax year 2013, and admitted that relevant conduct for sentencing purposes would include tax years 2011 and 2012, "resulting in a total tax loss over these three years of approximately $214,414." (*Id.*, p. 13). Mr. Bee further noted that the agreed-upon factual basis to the plea agreement further specified that not all of the total tax loss figure was due to criminal fraud, or even civil fraud, and left those matters to be determined at a later date in another forum. (*Id.*). Now, the government is urging this Court to base its criminal punishment upon these matters that were *not* contained in the agreed-upon factual statement, and have never been determined to be criminal in nature. Not only is that not fair, it is not accurate, and therefore violates Mr. Bee's due process rights. As Mr. Bee has repeatedly noted, the government's position mimics many of the factual inaccuracies set forth in the initial SAR which were determined to be inaccurate through the benefit of the subsequent analysis and negotiation between the parties, leading to the agreed-upon factual basis for the plea.

**I.     The Nature And Circumstances Of The Offense And The History And Characteristics Of The Defendant.**

To put this case in perspective, the case began as a civil audit of Mr. Bee for tax year

2011. With the benefit of the subsequent analysis of the case, it was determined that the total tax loss for tax year 2011 was $24,884. For those familiar with IRS investigations, this would not be a particularly significant number even for a civil audit. If Mr. Bee had adequate representation from the outset, this matter may well have run an entirely different course. Moreover, while the government notes that Mr. Bee "owned a bus company that had multi-million dollar gross receipts" each year, (Doc. 124, p. 3), the government never places Mr. Bee's conduct in context with respect to those receipts. For tax year 2011, the gross receipts for Bee Line Transportation were $4,155,984 (all revenue was reported). Thus, the tax loss of $24,884 represents 0.599% of the total gross receipts for 2011. The tax loss of $27,857 represents 0.646% of the gross receipts of $4,313,338 for tax year 2012. The higher tax loss of $161,673 represents 3.602% of the gross receipts of $4,488,365 for tax year 2013. The numbers here simply do not portray the present case as one in which the heavens must fall unless imprisonment is imposed.[2]

Apparently recognizing this fact, the government resorts to vilifying Mr. Bee personally.[3] However, the true facts about the kind of person Mr. Bee is and the

---

[2] This is not to minimize Mr. Bee's behavior at all; he has fully admitted that the total tax loss involves over $200,000. However, the facts are presented here to place the case in perspective, especially considering that Mr. Bee, even by the government's own account, never underestimated one penny of his or his company's income.

[3] The government attempts to portray Mr. Bee as some sort of cartoon villain who has spent decades engaged in charitable works, kind acts, and acting as a fair, compassionate, understanding, and even-handed justice of the peace, only to return to his nocturnal lair where he "lived in the dark and sought to conceal," (Doc. 124, p. 5), his elaborate criminal schemes to improperly depreciate assets and mischaracterize expenses. Such a portrayal of Mr. Bee is not only hyperbole but absurd.

circumstances of the case show that the PSI was correct in recommending a sentence of 60 months' probation under the conditions set forth in the report. The government, after failing to file any objections to the PSI, has waited until the eleventh hour to now object to the PSI's recommendation of probation. However, the government's disagreement with the PSI's recommendation is not only unjustified, it is based upon the same kinds of multiple errors that were set forth in the initial SAR.

      First, the government incorrectly claims that "Defendant put more than $1 million of expenses on Schedule C that did not belong there, including the costs to purchase, improve, or maintain four single-family homes in Tucson and one in Westport, Washington…." (Doc. 124, p. 4).[4] The net expenses were never in excess of $1 million, no matter how many times the government repeats this claim. The correct (and agreed-upon) number of net expenses that were eventually properly disallowed, but not necessarily fraudulent, was $692,309. The government's erroneous initial figures include mistakes by the agents initially working on

---

[4] This sentence, alone, shows the incompetence of Mr. Bee's tax preparer, Mr. Jeffrey Hill. Mr. Hill prepared the form for Bee Line Transportation to elect to be a Subchapter S corporation, which was accepted by the IRS. However, Mr. Hill did not file Subchapter S corporation tax returns, and filed a Schedule C to Mr. Bee's individual tax return. Any competent tax preparer would not have done this.

the case,[5] and undermine the government's insistence upon this Court relying upon only the *government's* version of facts that are not agreed to in the factual basis for the plea agreement.[6] That is why the agreed-upon factual basis for Mr. Bee's plea specifically notes that not all of the tax loss has been determined to be criminal, or even fraudulent, in nature.

In its further attempts to vilify Mr. Bee, the government repeats its inaccurate claims regarding the various real properties, which the government continues to erroneously characterize as all being personal residences. (Doc. 124, p. 4). For example, the government erroneously claims that Mr. Bee "makes no claim that the costs associated with the five single family homes were properly deducted as expenses of his bus company." (*Id.*). Mr. Bee has,

---

[5] For example, the SAR disallowed over $200,000 of deductions that were actually not deducted by Mr. Bee on his tax returns. For example, it included insurance deductions and restoration costs that were not deducted. Another example is the fact that the assigned revenue agent initially recognized that Mr. Bee was eligible for $500,000 in bonus depreciation, which was confirmed by a fraud and technical advisor, but that calculation was not included in the SAR. Another example is the failure in the initial analysis to fully allow Mr. Bee's charitable contributions of $54,461 on the 2011 return. Yet another example is the author of the SAR disallowing $24,511 in real estate taxes on various properties, when real estate taxes are always deductible. The subsequent analysis of the case discussed above revealed these, and other, errors.

[6] In any event, "disallowed" expenses are not synonymous with criminal behavior, as such expenses are sometimes later determined to be allowable by the IRS, determined to be subject to perhaps civil fines, or are otherwise resolved without *any* determination of criminal responsibility.

in fact, repeatedly shown the business (or investment rental) purposes for these properties.[7]

Thus, it is clearly incorrect for the government to state that "[e]very dime of that money has been disallowed in calculating the agreed tax loss." (*Id.*).

In sum, when the government's inaccurate, unsupported, and exaggerated rhetoric is set aside, the true facts concerning the history and characteristics of the defendant and the nature and circumstances of the offense show that the PSI's recommendation of a sentence of 60 months' probation under the conditions set forth in the report is clearly correct. Mr. Bee's Sentencing Memorandum sets forth in detail the nature of his conduct, his acceptance of responsibility, the serious numerous adverse personal and financial consequences he has faced, and will face, as a result of his conduct, his family circumstances and responsibilities, his business circumstances and responsibilities, and the numerous significant mitigating

---

[7] One clear example is the bus garage/warehouse on the "Saguaro Monument" property, (*see* Doc. 122 and photos attached thereto as Exhibit B), which the government for some reason continues to dispute. Other examples are the business office at 682 W. Rambler Court in Casa Grande, Arizona; the investment rentals and bus maintenance facilities on Pantano Trail; and the investment rental properties in the state of Washington. The government further errs in failing to recognize that several of his properties qualified for a § 1033 condemnation exchange, resulting in a deferment of any capital gains. The government initially incorrectly claimed, and included in the indictment, a loss of tax revenue on the capital gains when, in fact, it was the result of tax preparer incompetence but subsequently was correctly removed as a tax loss.

factors in his case, (Doc. 122), and those details will not be repeated here.[8] Contrary to the government's attempted portrayal, Mr. Bee is not a man of wealth and privilege. His net worth is over $1 million in the red, his company will fail without him working an extraordinary number of hours, and the family currently lives in a two-bedroom, single-wide trailer and receives partial food assistance from the food bank. As Mr. Bee has noted, the nature and circumstances of his offense are properly set forth in the agreed-upon factual basis to his plea agreement, and he accepts full responsibility for that conduct. Considering all of these factors, including a multi-hour meeting with Mr. Bee, the PSI has properly recommended a sentence of 60 months' probation under the terms set forth in the report, and the payment of restitution and interest in the amount of $343,133.05. He needs to continue working and making the bus company successful in the upcoming years to have a realistic chance of fulfilling this obligation in a timely manner and supporting his family. The future of the bus company, if Mr. Bee is available to run it, is on the upswing, as there is a dire need for his services and burgeoning business opportunities as the pandemic hopefully is reaching its endgame and schools are returning to normal.

---

[8] However, perhaps a bit of additional information is in order to show the kind of person Mr. Bee really is. A clerk for the domestic violence court approached Mr. Bee and told him that she had temporary custody of her two-year-old grandson who had been taken from his parents who were both doing drugs at the time of his conception and during his mother's pregnancy. The drug use apparently caused a physical deformity in the child which required surgery, and also caused the child to suffer severe ADHD. Mr. Bee's wife, Robin, visited the daycare where the child, Kaleb, was spending most of his time to observe his reaction with the other children. Mr. Bee and his wife then approached their four other children with the idea of adding Kaleb to the family. The entire family agreed, and Kaleb has been a member of the family for over 12 years now. These details are not set forth in the PSI, but they clearly show the type of person Mr. Bee is.

## II. Additional Sentencing Considerations.

As Mr. Bee expected, the government has cited to sentencing guideline policies and considerations in support of its claim that the PSI's recommendation of a sentence of probation should be rejected by this Court. The government has cited a United States Senate Report purportedly expressing the view that a sentence of probation is not appropriate for white-collar crimes, including tax offenses. (Doc. 124, p. 5). However, the government has omitted the statements in the report immediately following the sentence quoted by the government, where Congress, in addressing these white-collar offenses, added:

> This is not meant to imply that the Committee considers a sentence of imprisonment to be the only form of sentence that may effectively carry deterrent or punitive weight. It may *very often* be that release on probation under conditions designed to fit the particular situation will adequately satisfy any appropriate deterrent or punitive purpose. This is particularly true in light of the new requirement in section 3563(a) that a convicted felon who is placed on probation must be ordered to pay a fine or restitution or to engage in community service; he cannot simply be released on probation with no meaningful sanction…. In sum, the presence of the same predominant reason for imposing a sentence in different cases will not always lead logically to the same type of sentence. A congressional statement of a preferred type of sentence might serve only to undermine the flexibility that the criminal justice system requires in order to determine the appropriate sentence in a particular case in the light of increased knowledge of human behavior.

Senate Report No. 98-225, p. 92 (1983) (emphasis added).

With respect to the government's argument that the guidelines' policies and considerations require imprisonment rather than probation, the United States Supreme Court, in one of its most significant sentencing opinions, has made it clear that "the Guidelines are only one of the factors to consider when imposing sentence, and § 3553(a)(3) directs the judge to consider sentences other than imprisonment." *Gall v. United States*, 552 U.S. 38, 59

(2007). The Court in *Gall* emphasized the authority and responsibility of the district court to consider varying options to fulfil the purpose of the sentencing statutes, and emphasized that, rather than leniency, a sentence of probation imposes significant punishment. *Id*. at 48-49. The Court then quoted the district court's observations that:

> Any term of imprisonment in this case would be counter effective by depriving society of the contributions of Defendant who, the Court has found, understands the consequences of his criminal conduct and is doing everything in his power to forge a new life.

*Id*. at 44 (quoting district court). The Court further acknowledged the district court's observation that:

> a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing.

*Id*. at 54 (quoting district court). The Court also quoted the district court's admonition to the defendant "that probation, rather than 'an act of leniency,' is a 'substantial restriction of freedom.'" *Id*. at 44.

The Court further noted: "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue," *id*. at 52 (citation omitted), and found that the district court correctly rejected the PSI's recommendation of 30 to 37 months in prison, and properly imposed a sentence of probation. *Id*. at 43, 60.

In addition, it should also be noted that Justice (then Judge) Kavanaugh, writing for the District of Columbia Circuit Court of Appeals, rejected the same argument regarding

deterrence in tax cases that the government makes here. In *United States v. Gardellini*, 545 F.3d 1089 (D.C. Cir. 2008), Justice Kavanaugh's opinion upheld the district court's decision to disregard the sentencing guidelines range of 10 to 16 months of imprisonment and impose a sentence of 60 months' probation upon a defendant's guilty plea to one count of filing a false income tax return, where, as in the present case, the defendant accepted responsibility for his crimes, posed only a minimal risk of recidivism, and had already "suffered substantially" due to his prosecution. *Id*. at 1090-91.

Justice Kavanaugh rejected the government's argument that the sentence of probation would lessen the deterrent value of the criminal law: "If so, that is the result of Supreme Court precedents such as *Gall* that we are bound to follow. Moreover, the Government's argument based on deterrence alone is flawed because it elevates one § 3553(a) factor -- deterrence -- above all others." *Id*. at 1095. Justice Kavanaugh went on to "question the force of the Government's deterrence argument," noting that, "[i]n light of the discretion afforded to district courts by the Supreme Court's sentencing decisions, only a fool would think that he or she necessarily would receive the same sentence as Gardellini for a similar tax offense." *Id*.

In the present case, the PSI has properly taken all of the applicable sentencing considerations into account and has concluded that "a 60-month probation term is believed to represent an adequate sanction which addresses the purposes of sentencing and payment of restitution." (Doc. 123, p. 21). Mr. Bee submits that the PSI is correct and the recommended sentence of probation serves the purposes of the sentencing statutes and comports with the Court's duty to "impose a sentence sufficient, but not greater than

necessary, to comply with the purposes" of the sentencing statutes. 18 U.S.C. § 3553(a).

As part and parcel of a defendant's due process right to be sentenced only on the basis of accurate information, the Ninth Circuit Court of Appeals has stated "the district court may not consider improper, inaccurate, or mistaken information, nor may it make groundless inferences in imposing sentence." *United States v. Lai*, 944 F.2d 1434, 1440 (9th Cir. 1991). "This circuit insists on individualized sentencing that takes the individual as well as the crime into account." *Id*.

In the present case, the agreed-upon factual basis set forth in Mr. Bee's plea agreement accurately sets forth the nature and circumstances of the offense, and his sentence should be based on those facts. The PSI has correctly determined that, considering all of the relevant sentencing factors, a sentence of 60 months' probation under the conditions set forth in the report and restitution in the total amount of $343,133.05 is the appropriate sentence to be imposed upon Mr. Bee. Mr. Bee respectfully requests this Court to adopt that recommendation. Mr. Bee will not disappoint the Court if it chooses to adopt the probation office's recommendation.

RESPECTFULLY SUBMITTED this 14th day of March, 2022.

PICCARRETA DAVIS KEENAN FIDEL PC

By: /s/ Michael L. Piccarreta
Michael L. Piccarreta
Jefferson Keenan
*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of March, 2022, I electronically transmitted the foregoing to the Clerk of the Court via the CM/ECF system for filing and emailed a copy to:

**The Honorable James A. Soto:  soto_chambers@azd.uscourts.gov**

**Gabriela Ma, Judicial Assistant:  gabriela_ma@azd.uscourts.gov**

**Wendy Cotner, U.S. Probation:  wendy_cotner@azd.uscourts.gov**

**David Zipps, Esq.:  David.Zipps@usdoj.gov**
*Attorney for the United States*

<u>By: /s/  Melissa Hahn</u>